Jessica R. K. Dorman, Esq. (SBN: 279919)
jessica@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
T: (619) 233-7770
F: (619) 297-1022

Attorneys for Kathryn E. West

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| Kathryn E. West<br><br>Plaintiff,<br>v.<br><br>AT&T Mobility, LLC, EOS CCA, Diversified Consultants, Inc., and Receivables Performance Management, LLC<br><br>Defendants. | Case No: __'14CV0350 GPC DHB__<br><br>**Complaint For Damages**<br><br>**Jury Trial Demanded** |
|---|---|

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter

1. "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

3. Kathryn E. West, (Plaintiff), through Plaintiff's attorneys, brings this action to challenge the actions of AT&T Mobility, LLC, EOS CCA, Diversified Consultants, Inc., and Receivables Performance Management, LLC, ("Defendants"), with regard to attempts by Defendants to unlawfully and abusively collect a debt allegedly owed by Plaintiffs, and this conduct caused Plaintiff damages.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**PARTIES**

8. Plaintiff is a natural person who resides in the City of San Diego, State of California.

9. Defendant AT&T Mobility, LLC ("AT&T") is located in the City of Atlanta, in the State of Georgia.

10. Defendant EOS CCA ("EOS") is located in the City of Norwell, in the State of Massachusetts.

11. Defendant Diversified Consultants, Inc. ("Diversified Consultants") is located in the City of Jacksonville, in the State of Florida.

12. Defendant Performance Receivables Management, LLC ("RPM") is located in the City of Lynwood, in the State of Washington.

13. Plaintiff is obligated or allegedly obligated to pay a debt, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

14. Defendants are persons who use an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are therefore debt collectors as that phrase is defined by 15 U.S.C. § 1692a(6).

15. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

16. Defendants, in the ordinary course of business, regularly, on behalf of themselves, or others, engage in debt collection as that term is defined by

California Civil Code § 1788.2(b), are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

17. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

## JURISDICTION AND VENUE

18. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692(k), and 28 U.S.C. § 1367 for supplemental state claims.

19. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act").

20. Plaintiff is a natural person who resides in the City of San Diego, County of San Diego, State of California.

21. Defendant AT&T offers services and products throughout San Diego County to customers who reside throughout San Diego County, including Plaintiff.

22. Defendant AT&T also operates many physical retail locations in San Diego County.

23. Because AT&T operates in San Diego County and the services offered by AT&T to Plaintiff while she resided and was physically in San Diego County are a substantial part of the events giving rise to the claim, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

24. Defendant EOS attempted to collect an alleged debt from Plaintiff by mailing a collection letter to Plaintiff's residence in San Diego, California. This letter was in violation of the FDCPA and Rosenthal Act.

25. Because this letter mailed to Plaintiff at her San Diego address is a substantial part of the events giving rise to the claim, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

26. Defendant Diversified Consultants attempted to collect an alleged debt from Plaintiff by entering a trade line on her credit report. This improper reporting by Diversified Consultants was in violation of the FDCPA and Rosenthal Act.

27. Because this improper reporting was communicated to Plaintiff at her San Diego address where she accessed her credit report, it is a substantial part of the events giving rise to the claim, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

28. Defendant RPM attempted to collect an alleged debt from Plaintiff by mailing a collection letter to Plaintiff's residence in San Diego, California. This letter was in violation of the FDCPA and Rosenthal Act.

29. Because this letter mailed to Plaintiff at her San Diego address is a substantial part of the events giving rise to the claim, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

30. Because Defendants do business within the County of San Diego, in the State of California, personal jurisdiction is established.

31. At all times relevant, Defendants conducted business within the County of San Diego, in the State of California.

32. Each of the Defendants regularly operate within the county of San Diego offering their services or reaching out to alleged debtors to collect on a alleged debt. These services and collection efforts towards Plaintiff in the County of San Diego are the actions that give rise to the claim alleged and therefore venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2).

///

///

## FACTUAL ALLEGATIONS

33. Throughout 2012 Plaintiff's iPhone 3, provided by AT&T failed to properly operate consistently.

34. Plaintiff contacted AT&T multiple times for help in resolving the issues with the iPhone 3.

35. AT&T was only able to offer temporary fixes and Plaintiff felt that she was getting the run-around by AT&T.

36. The problems with her phone often left her without the use of her cellphone for long periods of time which caused her great stress and anxiety.

37. The problems with her iPhone 3 continued and by October 2012, Plaintiff decided to seek services with another provider.

38. On or around October 8, 2012 Plaintiff went to a Verizon retailer and spoke with a store employee about switching service providers from AT&T to Verizon.

39. Plaintiff was enticed to switch from AT&T to Verizon by an offer from Verizon for two free iPhone 4 devices with a two year service contract.

40. Plaintiff needed two phones, for her and her daughter, and decided to switch from AT&T to Verizon because of the great offer.

41. That day, the Verizon representative prepared a contract for Plaintiff for two years of service which Plaintiff agreed to and signed.

42. The Verizon employee then contacted AT&T with Plaintiff on the line to transfer the phone numbers (known as "Porting").

43. During this call to AT&T, Plaintiff was told that there would be a cancellation charge of approximately $165 at most.

44. Plaintiff confirmed that she wanted to cancel her AT&T contract and port the two cell phone numbers from AT&T to Verizon.

45. Plaintiff subsequently paid the cancellation charge and believed that her relationship with AT&T was over.

46. After setting up services with Verizon, the Verizon representative informed Plaintiff that they were out of stock for the iPhone 4 and would have more in two weeks. In the meantime, they offered her two Android phones.
47. Plaintiff accepted the Android phones based on the promise that two iPhone 4 devices would be available in two weeks.
48. On or about October 18, 2012 Plaintiff went back to the store for her iPhone 4 devices, in hopes that they might have the phones in stock earlier than expected.
49. Unfortunately, the Verizon retailer still did not have any iPhone 4 devices in stock.
50. At this time, the Verizon employee tried to convince Plaintiff to instead pay an extra cost and upgrade to the iPhone 5, which they had in stock.
51. Plaintiff did not want the iPhone 5 and did not want to pay extra for it.
52. The following Saturday, October 20, 2013, Plaintiff was contacted by a Verizon retailer employee and told to come into the store to pick up the two iPhone 4 devices.
53. Plaintiff was not able to get to the store on that day.
54. By the time Plaintiff made it to the store, a few days later, the Verizon retailer was out of stock of the iPhone 4 devices again and had not reserved two phones for her.
55. Plaintiff was extremely upset by this misrepresentation by Verizon.
56. Before signing a new two year service agreement with Verizon and canceling her service with AT&T, she expressed to the employee that she wanted the iPhone 4 devices and the employee promised it to her in order to get her to sign a two year contract.
57. Plaintiff was instructed to pay extra to upgrade or wait again for more iPhone 4 devices to be in stock.

58. Subsequently, AT&T contacted Plaintiff and made a similar offer to Plaintiff for two free iPhone 4 devices with two year service agreements.
59. Plaintiff went to the AT&T store to talk to the sales representative.
60. The offer by AT&T sounded pretty good to Plaintiff, especially since the Verizon store was not following through on their deal.
61. Without agreeing to any service contract, signing any documents, or giving consent to AT&T, AT&T ported the numbers back from Verizon, thereby disabling the two Verizon phones and reactivating the two AT&T phones that Plaintiff had stored at home.
62. Plaintiff is alleged to have incurred certain financial obligations to AT&T when the number was ported back to AT&T.
63. These financial obligations were primarily for personal, family or household purposes and are therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).
64. These alleged obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).
65. It was at this time that Plaintiff was told that AT&T did not have the iPhone 4 devices either and the employee tried to get Plaintiff to pay the extra cost for the iPhone 5 devices.
66. AT&T offered a deal to Plaintiff that AT&T knew it could not follow through with.
67. Plaintiff was very upset by this misrepresentation by AT&T.
68. At this point, Plaintiff told AT&T that she would just stick with Verizon.
69. It was at this time that Plaintiff was told by an AT&T employee that the numbers were ported and that AT&T could not undo the porting.

70. Plaintiff and her daughter needed cell phones, as do most people in their every day life.

71. Plaintiff had no choice but to keep the AT&T phones until she could get back to a Verizon retailer to straighten everything out with Verizon.

72. Unfortunately, when AT&T ported the numbers back to themselves (AT&T), the AT&T phones which were now active were at home.

73. Plaintiff's daughter only had the Verizon phone with her, which AT&T deactivated without Plaintiff's permission.

74. Plaintiff's daughter works in a unsavory neighborhood and would be fearful walking to her vehicle if not for being able to talk to Plaintiff on her way home.

75. AT&T caused an extreme hardship on Plaintiff and her daughter.

76. Plaintiff is aware of the dangerous neighborhood and is also relieved to be able to talk to her daughter as she walks to the vehicle. Because of AT&T Plaintiff was unable to do this and was very distraught about her daughter's safety.

77. Plaintiff went home and called AT&T to try to work out the issue. The representative on the phone stated to Plaintiff that she must have signed a contract, the store could not have ported the number without a contract.

78. Plaintiff insisted that she signed nothing and gave no consent; still the AT&T call center could do nothing to remedy the situation.

79. After about a week, Plaintiff was able to visit a Verizon store. This time she went to a different store and spoke directly to the manager.

80. Plaintiff explained the whole situation to the Verizon store manager who looked up Plaintiff's account and could see all of the confusion in the account.

81. The Verizon manager decided that the quickest and simplest way to fix the situation was to close the first Verizon account and open a new one with the numbers ported back from AT&T.

82. The Verizon manager stated that the old account would be closed and nothing would be owed by Plaintiff on that account.

83. This new Verizon store also had iPhone 4 devices in stock. Plaintiff took one of the iPhone 4 devices and her daughter kept the Android phone Verizon perviously provided.

84. Plaintiff thought that would be the end of all of the mix-ups.

85. However, sometime thereafter, Plaintiff allegedly fell behind in the payments allegedly owed on the alleged debt to AT&T for the 7-10 days of service that she did not contract for.

86. Plaintiff currently believes that she owes nothing to AT&T.

87. AT&T began contacting Plaintiff in an attempt to collect on the alleged debt created by the 7-10 days that she had service on two phones after AT&T improperly closed Plaintiff's Verizon account and ported the phone numbers.

88. Plaintiff did not pay AT&T.

89. Subsequently, but before January 31, 2013, the alleged debt to AT&T was assigned, placed, or otherwise transferred, to EOS for collection.

90. On or about January 31, 2013, at the instruction of AT&T, EOS mailed a dunning letter to Plaintiff. A few days later, Plaintiff received that letter.

91. This communication to Plaintiff was a "communication" as that term is defined by 15 U.S.C. § 1692a(2), and an "initial communication" consistent with 15 U.S.C. § 1692g(a).

92. This communication was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).

93. EOS's January 31, 2013 letter claimed that Plaintiff owed $296.56 to AT&T.

94. Subsequently, Plaintiff spoke to EOS and attempted to explain the error and why she felt she did not owe any money.

95. Though, Plaintiff felt that she did not owe any money, EOS persisted with its collection attempts.

96. Through this conduct, Defendants EOS and AT&T were collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, Defendant violated 15 U.S.C. § 1692f(1).

97. Because this violated certain portions of the federal Fair Debt Collection Practices Act as these portions are incorporated by reference in the Rosenthal Fair Debt Collection Practices Act, through California Civil Code § 1788.17, this conduct or omission violated Cal. Civ. Code § 1788.17.

98. Eventually, Plaintiff broke down and decided that she wanted the collection efforts to end.

99. On or about February 15, 2013 Plaintiff paid a total of $319.56 to settle the account.

100. Again, she believed that the account was settled and closed.

101. Plaintiff's fears came true, and AT&T continued to try to collect on the alleged debt that Plaintiff believed to be resolved.

102. Subsequently, but before August of 2013, the alleged debt to AT&T was assigned, placed, or otherwise transferred, to Diversified Consultants for collection.

103. Plaintiff discovered in April of 2013 that Diversified Consultants began reporting the alleged debt to AT&T on Plaintiff's credit report beginning in April of 2013.

104. Diversified consultants reported that Plaintiff owed $142.00 for an AT&T Wireless account.

105. Through this conduct, Defendants Diversified Consultants and AT&T were collecting an amount (including any interest, fee, charge, or expense

   incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, Defendant violated 15 U.S.C. § 1692f(1).

106. Because this violated certain portions of the federal Fair Debt Collection Practices Act as these portions are incorporated by reference in the Rosenthal Fair Debt Collection Practices Act, through California Civil Code § 1788.17, this conduct or omission violated Cal. Civ. Code § 1788.17.

107. Plaintiff did not pay Diversified Consultants and once again the account was reassigned to another collection agent by AT&T.

108. Subsequently, but before January 16, 2014, the alleged debt to AT&T was assigned, placed, or otherwise transferred, to RPM for collection.

109. On or about January 16, 2014, at the instruction of AT&T, RPM mailed a dunning letter to Plaintiff. A few days later, Plaintiff received that letter.

110. This communication to Plaintiff was a "communication" as that term is defined by 15 U.S.C. § 1692a(2), and an "initial communication" consistent with 15 U.S.C. § 1692g(a).

111. This communication was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).

112. RPM's January 16, 2014 letter claimed that Plaintiff owed $141.56 to AT&T.

113. Through this conduct, Defendants RPM and AT&T were collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, Defendant violated 15 U.S.C. § 1692f(1).

114. Because this violated certain portions of the federal Fair Debt Collection Practices Act as these portions are incorporated by reference in the Rosenthal

Fair Debt Collection Practices Act, through California Civil Code § 1788.17, this conduct or omission violated Cal. Civ. Code § 1788.17.

115. As as result of the actions by Defendants Plaintiff has suffered great stress and anxiety as a result of the repeated collection attempts of money not owed.

116. Furthermore, Plaintiff was unable to qualify for an auto loan due to the improper credit reporting by Defendants.

## CAUSES OF ACTION

### COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

### 15 U.S.C. §§ 1692 ET SEQ.

### [AS TO EOS CCA, DIVERSIFIED CONSULTANTS, INC., AND RECEIVABLES PERFORMANCE MANAGEMENT, LLC]

117. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

118. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

119. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

### COUNT II

### ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (ROSENTHAL ACT)

### CAL. CIV. CODE §§ 1788-1788.32

### [AS TO ALL DEFENDANTS]

120. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

121. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32

122. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each and every defendant, jointly and severally.

## COUNT III

### NEGLIGENT MISREPRESENTATION

### [AS TO AT&T ONLY]

123. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

124. Defendant represented to Plaintiff that Plaintiff could have two iPhone 4 phones if she signed a two year contract as true even though Defendant had no reasonable grounds for believing said representation was true when the representation was made.

125. Defendant could have easily reviewed their inventory prior to promising products that were not available.

126. Defendant intended that Plaintiff rely on the representation of Defendant.

127. Plaintiff reasonably relied on the representation of Defendant.

128. Because of this reliance, Plaintiff was harmed by this misrepresentation as both misrepresentations caused an extreme amount of stress and anxiety for Plaintiff.

129. The reliance by Plaintiff on the representation of Defendant was a substantial factor in causing Plaintiff harm.

///

## COUNT IV

### INTENTIONAL MISREPRESENTATION

### [AS TO AT&T ONLY]

130. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

131. Defendant represented to Plaintiff that Plaintiff could have two iPhone 4 phones if she signed a two year contract as true even though Defendant had no reasonable grounds for believing said representation was true when the representation was made.

132. Defendant knew said representation was false when it was made or made the representation recklessly and without regard for its truth.

133. Defendant intended that Plaintiff rely on its representations in order to induce Plaintiff to enter a two-year contract with AT&T.

134. Plaintiff reasonably relied on the representation of Defendant.

135. Because of this reliance, Plaintiff was harmed.

136. The reliance by Plaintiff on the representations of Defendant was a substantial factor in causing Plaintiff harm.

## COUNT V

### NEGLIGENCE

### [AS TO AT&T ONLY]

137. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

138. The actions and omissions of Defendant were negligent.

139. Defendant AT&T has a duty to use due care to verify authorization prior to transferring telephone numbers from other service providers and canceling other contracts.

140. Due care requires reasonable care.

141. Defendant AT&T has a duty to only transfer cell phone numbers when authorized in writing by the holder of the phone number.

142. Defendant AT&T has a duty to remedy improper transactions.
143. Defendant AT&T has a duty to only charge for services as authorized under a contract.
144. Defendant AT&T breached its duty by transferring Plaintiffs phone number from Verizon to AT&T without obtaining authorization from Plaintiff.
145. Defendant was aware of the probably dangerous consequences of their conduct and Defendant willfully and deliberately failed to avoid those consequences.
146. Plaintiffs were harmed, and suffered injury as described above.
147. The negligence of Defendant was a substantial factor in causing Plaintiffs this harm and injury.
148. As said conduct was carried out by Defendant in an oppressive, malicious, despicable, gross and wontonly negligent manner, said conduct demonstrates Defendant's conscious disregard for the rights and safety of Plaintiffs or their family. As such Plaintiffs are entitled to recover punitive damages from Defendant in an amount according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);
- An award of actual damages pursuant to California Civil Code § 1788.30(a);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

1 • An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c);

• Punitive damages;

• Special, general, compensatory and punitive damages.

149. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**Hyde & Swigart**

Date: February 13, 2014          By: /s/Jessica R. K. Dorman
                                     Jessica R. K. Dorman
                                     Attorneys for Plaintiff